# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 3:17-CV-582-DJH _____ |
| v. | ) ) JURY TRIAL DEMANDED |
| PHARMERICA CORPORATION, GEOFFREY G. MEYERS, GREGORY S. WEISHAR, FRANK E. COLLINS, W. ROBERT DAHL, JR., MARJORIE W. DORR, BOB OAKLEY, PATRICK G. LEPORE, PHOENIX PARENT HOLDINGS INC., and PHOENIX MERGER SUB INC., | ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on August 2, 2017 (the "Proposed Transaction"), pursuant to which PharMerica Corporation ("PharMerica" or the "Company") will be acquired by Phoenix Parent Holdings Inc. ("Parent") and Phoenix Merger Sub Inc. ("Merger Sub," and together with Parent, "Phoenix"), which are affiliates of private equity firm Kohlberg Kravis Roberts & Co. L.P. ("KKR"). At the closing of the Proposed Transaction, Walgreens Boots Alliance, Inc. ("WBA") will acquire a minority ownership interest in Parent.

2. On August 1, 2017, PharMerica's Board of Directors (the "Board" or "Individual

Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Phoenix. Pursuant to the terms of the Merger Agreement, shareholders of PharMerica will receive $29.25 in cash for each share of PharMerica they own.

3. On September 6, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of PharMerica common stock.

9. Defendant PharMerica is a Delaware corporation and maintains its headquarters at 1901 Campus Place, Louisville, Kentucky 40299. PharMerica's common stock is traded on the NYSE under the ticker symbol "PMC."

10. Defendant Geoffrey G. Meyers ("Meyers") has served as a director of PharMerica since 2009, and has served as Chairman of the Board of the Company since 2011.

11. Defendant Gregory S. Weishar ("Weishar") is a director and has served as Chief Executive Officer ("CEO") of PharMerica since 2007.

12. Defendant Frank E. Collins ("Collins") has served as a director of PharMerica since 2007.

13. Defendant W. Robert Dahl, Jr. ("Dahl") has served as a director of PharMerica since 2008.

14. Defendant Marjorie W. Dorr ("Dorr") has served as a director of PharMerica since 2009.

15. Defendant Bob Oakley ("Oakley") has served as a director of PharMerica since 2008.

16. Defendant Patrick G. LePore ("LePore") has served as a director of PharMerica since 2013.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Parent is Delaware corporation and a party to the Merger Agreement.

19. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of PharMerica (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of August 29, 2017, there were 31,118,849 shares of PharMerica common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

*Background of the Company*

27. Formed in 2006, PharMerica is an institutional pharmacy services company that services healthcare facilities, provides pharmacy management services to hospitals, provides specialty infusion services to patients outside a hospital setting, and offers the only national oncology pharmacy in the United States. PharMerica is the second largest institutional pharmacy services company in the United States based on revenues and customer licensed beds under contract, operating 99 institutional pharmacies, 19 specialty infusion centers, and 4 specialty oncology pharmacies in 45 states. The Company's customers are typically institutional healthcare providers, such as skilled nursing facilities, assisted living facilities, hospitals, individuals receiving in-home care, and patients with cancer.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

28. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

29. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

30. First, the Proxy Statement omits material information regarding PharMerica's financial projections and the valuation analyses performed by the Company's financial advisors, UBS Securities LLC ("UBS") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch").

31.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

32.     With respect to PharMerica's financial projections, the Proxy Statement discloses five different sets of projections (referred to as the "2015 Projections," "April 2016 Projections," "September 2016 Projections," "April 2017 Projections," and "July 2017 Projections") that generally include projections of the Company's expected revenue, gross profit, adjusted EBITDA, and adjusted earnings per share. The Proxy Statement, however, fails to provide stockholders with the line item projections for the non-GAAP projections of adjusted EBITDA and adjusted earnings per share, or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures. Indeed, defendants admit in the Proxy Statement that "certain metrics included in the Projections are non-GAAP measures, and the Projections do not include footnote disclosures as may be required by GAAP." To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP.

33.     Further, the Proxy Statement fails to disclose important projections that were used by UBS and BofA Merrill Lynch in their respective Discounted Cash Flow Analyses of

PharMerica. Specifically, the Proxy Statement generally states that each of UBS and BofA Merrill Lynch performed their analyses by using the Company's unlevered free cash flows that PharMerica was forecasted to generate from July 1, 2017 through December 31, 2021. The Proxy Statement, however, fails to, but must, disclose to stockholders the Company's projected unlevered free cash flows through year 2021, which were a key input in each of the financial advisors' valuation analyses.

34. With respect to UBS's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the standalone, unlevered, free cash flows that PharMerica was forecasted to generate from July 1, 2017 through December 31, 2021, as used by UBS in its analysis, as well as the corresponding definition and constituent line items; (ii) whether UBS's analysis accounted for any potential synergies or net operating loss carryforwards, and if not, the reason for failing to do so; (iii) the inputs and assumptions underlying the discount rate range of 8% to 9%; and (iv) the perpetuity growth rates implied from UBS's analysis.

35. With respect to UBS's Selected Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies observed by UBS in its analysis.

36. With respect to UBS's Selected Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions observed by UBS in its analysis.

37. With respect to BofA Merrill Lynch's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows that the Company was forecasted to generate from the third fiscal quarter of 2017 through calendar year 2021, as used by BofA Merrill Lynch in its analysis, as well as the corresponding definition

7

and constituent line items; (ii) the inputs and assumptions underlying the discount rate range of 7.5% to 8.5%; and (iv) the perpetuity growth rates implied from BofA Merrill Lynch's analysis.

38. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Opinions of the Company's Financial Advisors;" and (ii) "Projected Financial Information."

39. Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers.

40. The Proxy Statement states that, "[p]rior to and since the announcement of the merger, KKR and WBA have had discussions with certain executive officers of the Company regarding potential post-closing employment and retention arrangements, and may enter into definitive agreements with them regarding their employment and related compensation and benefits following the closing of the merger." The Proxy Statement, however, fails to disclose the timing and nature of all communications regarding future employment of PharMerica's officers, including who participated in all such communications.

41. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of the Company's Directors and Executive Officers in the Merger."

43. Third, the Proxy Statement omits material information regarding potential conflicts of interest of UBS.

44. Specifically, the Proxy Statement indicates that UBS "had investment banking relationships with PharMerica" prior to the Proposed Transaction, but the Proxy Statement fails to disclose the timing and nature of the services that UBS has provided to the Company, as well as the compensation that UBS has earned from PharMerica in the past.

45. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Opinions of the Company's Financial Advisors."

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to PharMerica's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and PharMerica**

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. PharMerica is liable as the issuer of these statements.

50. The Proxy Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

51. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

53. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

54. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Phoenix

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants and Phoenix acted as controlling persons of PharMerica within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of PharMerica and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the

Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

58. Each of the Individual Defendants and Phoenix was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

60. Phoenix also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

61. By virtue of the foregoing, the Individual Defendants and Phoenix violated Section 20(a) of the 1934 Act.

62. As set forth above, the Individual Defendants and Phoenix had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are

threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 20, 2017　　　　　　　**GRAY & WHITE LAW**

　　　　　　　　　　　　　　　　　　By: */s/ Jacob Levy*
　　　　　　　　　　　　　　　　　　　　Mark K. Gray
　　　　　　　　　　　　　　　　　　　　Jacob E. Levy
　　　　　　　　　　　　　　　　　　　　GRAY & WHITE
　　　　　　　　　　　　　　　　　　　　713 E. Market St. #200
　　　　　　　　　　　　　　　　　　　　Louisville, KY 40202
　　　　　　　　　　　　　　　　　　　　(502) 805-1800

　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

**OF COUNSEL: (Pro Hac Pending)**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800